(39 App. Div. 515.)

### JACQUELIN v. MORNING JOURNAL ASS'N.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

1. LIBEL—IDENTITY OF PERSON LIBELED—PLEADING.

Where, in an action for libel, defendant, after answer, and at the trial, first objects that the complaint does not allege that the libel was published of and concerning plaintiff, the averments in the answer may be considered in determining plaintiff's identity with the person libeled.

2. SAME—REMARKS OF COUNSEL.

In an action for libel remarks of plaintiff's counsel, in opening, that he would prove plaintiff a man of good character, who had never been involved in any charge of fraud or crime, nor been guilty of any wrong, are not improper, since the law presumes these facts.

3. SAME—VERDICT.

A libelous article accused plaintiff of being a Spiritualist, and intimated that he spent the greater part of a large trust fund in his possession on "spook-raising, table-turning, and spirit pictures," and that one of the beneficiaries had sued him for an accounting, and to recover money obtained by fraud; that he had left the state to avoid process, and the beneficiary's attorney would apply to the court for an order for his arrest; and that he had been suddenly dropped from the board of directors of a bank. *Held*, that a verdict of $5,000 for plaintiff was not so large as to show that the jury had been influenced by passion or prejudice.

Appeal from trial term, New York county.

Action by John H. Rogers (Minnie A. Jacquelin, as administratrix, substituted) against the Morning Journal Association. There was a judgment for plaintiff, and defendant appeals. Affirmed.

The action was brought by John H. Rogers, since deceased, to recover damages for an alleged libel. The complaint alleged:

"Third. That on the 30th day of June, 1894, the following article was printed and published in said newspaper, the Morning Journal, by the said defendant:

"'Rap, Rap, Rap, $100,000.

"'Did Spirits Cost John H. Rogers That Sum?

"'A Woman Sues a Bank Director For an Accounting—Is it a Luther Marsh Case?

"'John H. Rogers, formerly a trustee of the Broadway Savings Bank, a director of the Broadway National Bank, and at one time president of the Mechanics' and Builders' Exchange, has been made defendant in two suits in the supreme court, which, when they come to trial, will prove of a highly sensational nature. The suits are for an accounting of trust funds, and to recover money that Mr. Rogers is alleged to have obtained by fraud. It is said, how-

ever, that Spiritualism will play a prominent part in the trials. It is said that Mr. Rogers, who was for a number of years a prominent figure in Spiritualistic circles, spent the greater part of this money on spook-raising, table-turning, and spirit pictures. The suits are both brought by Annie A. McKune, a daughter of the late James Stephens. Mrs. McKune's sister is Mr. Rogers' wife. Mrs. McKune wants from Rogers an accounting of her father's estate, and also wants to recover $3,000 that she says Mr. Rogers obtained from her in an extremely peculiar way. She says that on October 1, 1891, she was in a weakened condition of mind, caused by the death of her daughter, and, when she asked Rogers for an accounting of her father's estate, that he, taking advantage of her mental condition, "induced her to pay over to him the sum of $3,000 by falsely and fraudulently representing and pretending that he had in his hands notes to the extent of $6,000 made by James McKune," her late husband. These notes, it is alleged, Rogers said were given by McKune to James Stephens, her father. She says Rogers threatened to take steps to compel her to pay these notes. She consented, she says, to allow $3,000 to be taken from the trust funds in Rogers' hands in payment of the notes. It afterwards appeared that the notes for $6,000 were seventeen years old, and therefore outlawed, even if they had not been paid, which Mrs. McKune says she has every reason to believe is the case. The complaint in this suit states that Rogers and his wife have still in their possession considerable property that rightfully belongs to her, wholly or in part. This trust amounted originally to about $100,000. Her two suits are—First, for accounting of this $100,000 trust; and, second, to recover the $3,000 which Rogers is alleged to have obtained on the outlawed notes. When Mrs. McKune's lawyers tried to serve the summons complaint upon Rogers, they were unable to find him, and they say he has left the state. It is their purpose to apply to the supreme court for an order for his arrest. It was learned at the Broadway Savings Bank and the Broadway National Bank that Mr. Rogers had been suddenly dropped from their boards of directors, but no information could be had as to the reasons for this.'

"Fourth. That no action was ever brought by said Annie A. McKune against this plaintiff prior to the 1st day of October, 1894, and no action was pending between plaintiff and said Annie A. McKune on the 30th day of June, 1894. or about that date. * * *

"Sixth. That, in consequence of the printing and publishing of said article by said defendant in said newspaper, this plaintiff has been damaged in the sum of twenty-five thousand dollars."

The defendant's answer admits the publication, and sets up various defenses; alleging, among other things, in separate paragraphs contained in the third defense: "(8) That * * * an action was begun * * * by Annie A. McKune, as plaintiff, against John H. Rogers, the plaintiff in this action, individually and as sole acting trustee of James Stephens, deceased. * * * (9) That on or about the 1st day of June, 1894, an action was begun * * * by Annie A. McKune, as plaintiff, against John H. Rogers, the plaintiff in this action, individually and as sole acting trustee of James Stephens, deceased. * * *"

The action was tried, and resulted in a verdict for the plaintiff for $5,000; and from the judgment thereupon entered, and the order denying a new trial. the defendant appeals.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

B. F. Einstein, for appellant.
E. T. Taliaferro, for respondent.

O'BRIEN, J. At the opening of the trial, before any testimony had been taken, the defendant moved to dismiss the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, in the absence of an allegation therein that the article was

published of and concerning the plaintiff. The substantial question on this appeal is presented by the exception taken to the denial of this motion.

At common law it was necessary to allege in an action for libel that the article complained of was published of and concerning the plaintiff, and to set up, by way of colloquium or prefatory averments, matter connecting the plaintiff with the publication. This, however, is no longer necessary, under our code system of pleading, which provides (section 535):

"It is not necessary, in an action for libel or slander, to state, in the complaint, any extrinsic fact, for the purpose of showing the application to the plaintiff, of the defamatory matter; but the plaintiff may state, generally, that it was published or spoken concerning him."

Pursuant to the other provision of the Code (section 519), which requires that the allegations of a pleading are to be liberally construed, the courts would seemingly be inclined to exact, not that the express language of the Code should be used, but that equivalent words would be sufficient. New York & W. Water Co. v. Morning Journal Ass'n, 7 App. Div. 609, 40 N. Y. Supp. 272. The complaint here does not allege in terms that the libelous words were spoken of and concerning the plaintiff; yet this John H. Rogers, plaintiff's intestate, was formerly a trustee of the Broadway Savings Bank, a director of the Broadway National Bank, and at one time president of the Mechanics' & Builders' Exchange, and was married to a sister of Annie A. McKune, a daughter of the late James Stephens. The identity of names, together with a description of the man spoken of in the alleged libel, would seemingly raise a presumption of the identity of persons, and have a tendency to show that the article was written of and concerning the plaintiff's intestate. It is unnecessary, however, to decide that the article sufficiently identifies it as being spoken of and concerning this particular John H. Rogers, because the complaint, in so far as it may have been deficient, was aided by many averments in the answer which pointed out the identity of the plaintiff with the person about whom the words were published,—particularly by the separate and distinct paragraphs contained in the third defense. If the complaint, standing by itself, was insufficient, advantage should have been taken of this objection by demurrer. Where, however, an answer has been served, and the case is on trial, and the defendant then for the first time raises the objection, the sufficiency of the complaint is to be determined by the pleadings which are then before the court; and if the answer aids the complaint in the respects in which it is deficient, by supplying the necessary averments, the motion to dismiss must be denied. Bliss, in his work on Code Pleading, states the rule as follows (section 437):

"It is a rule of common-law pleading that an omission to state a material fact, either in the declaration or special plea, may be supplied by the pleading of the opposite party. Chitty calls it 'express aider.'"

This doctrine of the common law as to express aider has been frequently recognized in our Code pleading. Thus, in Cohu v. Husson, 113 N. Y. 662, 21 N. E. 703, which was an action upon a promissory note, the complaint set forth the note, and alleged that plaintiffs

were the owners thereof, but did not allege that it was executed by defendant, or that any specific sum was due plaintiffs thereon, as required by the Code of Civil Procedure (section 534). The answer admitted the execution of the note by defendant. It did not allege payment, but set up as a defense want of consideration. Held that, if the complaint would have been held defective if demurred to, the defect was cured by the answer, and that the complaint might be deemed amended. In that case, as in this, the motion to dismiss was made at the opening of the trial upon the ground that the complaint did not state facts sufficient to constitute a cause of action. See, also, Strauss v. Trotter, 6 Misc. Rep. 77, 26 N. Y. Supp. 20; Miller v. White, 4 Hun, 62; Leon v. Bernheimer, 10 Wkly. Dig. 228; Bate v. Graham, 11 N. Y. 237.

The appellant contends further that, for errors committed in the opening by plaintiff's counsel to the jury, the judgment should be set aside. These consisted of statements made by the counsel that he intended to show that the plaintiff was a man of good character, and had never been involved in any transaction in connection with which the charge of fraud or crime could be brought against him, and that during his long life he had maintained a good reputation, and had not been guilty of any specific acts of wrongdoing. We think that some latitude must necessarily be allowed to counsel in opening, and that, even though he be in error in his statement of what he expects to be able or allowed to prove, a judgment otherwise right should not be disturbed on that ground unless it clearly appears that the defendant was injured, or that the counsel exceeded the limits of his privilege. If we take all that the plaintiff's counsel said, and summarize it, it is but equivalent to a statement that the plaintiff was a man of good character; and this is exactly what, in the absence of any statement or any issue being made on that subject, the law would presume. In this very case the defendant's counsel disclaimed any desire to attack the plaintiff's character; and because of that, and for the additional reason that it was not put in issue, it was not proper or necessary to prove it. If this statement were fatal to the judgment, equally fatal would be such a statement if made in the summing up of counsel; and yet we think it would be entirely proper for counsel to refer to that which the law presumes,—that a man's character is good,—particularly in a case where its being good is conceded.

The appellant further insists that the damages awarded were excessive. These are peculiarly within the province of a jury, and the court will not interfere with the amount unless it appears that the jury were influenced by passion or prejudice to award an excessive amount. Considering the nature of the publication, which was libelous per se, and its tendency to injure the plaintiff, seemingly, in his good name and reputation, though the amount awarded was large, it was not so excessive as to justify our conclusion that it was the result of excessive feeling against the defendant.

The other exceptions to rulings upon evidence we have examined, but find them without merit.

We think that the judgment and order appealed from must be affirmed, with costs. All concur.