### REMUS v. UNITED STATES, and thirteen other cases.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1923.)

#### Nos. 3848–3861.

1. **Conspiracy ☞28—One formed to commit numerous offenses continues until consummation of purposes or abandonment.**

   Though the continuance of the result of the commission of an offense contemplated by a conspiracy would not necessarily continue the conspiracy, a conspiracy formed for the commission of a continuity of offenses in violation of National Prohibition Act, tit. 2, by the unlawful transportation, possession, and sale of intoxicating liquors, contemplates a continuous co-operation of the conspirators in the perpetration of a series of offenses, and continues until the time of its abandonment, or the final accomplishment of its purpose.

2. **Conspiracy ☞43(12)—Government need not prove formation on date alleged.**

   Under Rev. St. § 1025 (Comp. St. § 1691), it is not necessary for the government to prove that a conspiracy was formed on the exact date averred in the indictment.

3. **Conspiracy ☞43(5)—Indictment held to allege overt acts were committed subsequent to formation of conspiracy.**

   An indictment alleging that the overt acts, which are necessary to complete the crime of conspiracy under Rev. St. § 5440, were committed to effect the object of "said unlawful and felonious conspiracy," sufficiently charges that the overt acts were committed after the conspiracy was formed, while it was still in existence, and in furtherance of its unlawful purpose.

4. **Conspiracy ☞44½—Facts necessary for government to prove stated.**

   Under an indictment charging conspiracy to commit numerous violations of the National Prohibition Act, it was incumbent on the government to prove beyond a reasonable doubt that the defendants, or two or more of them, entered into a conspiracy for the unlawful purpose charged prior to the commission of the overt acts alleged in the indictment, and that one or more of the overt acts was committed by one or more of the defendants after the conspiracy had been formed, and while it was still in existence, and in furtherance of the purposes of that conspiracy.

5. **Conspiracy ☞43(6)—Charge conspiracy was to commit numerous offenses during period of three years does not invalidate.**

   Though an indictment charging a conspiracy to commit a very large number of offenses under the National Prohibition Act, extending over a period of three years, charged the most extraordinary conspiracy both as to the time of its continuance and the number of offenses for the commission of which it was formed, that had ever come to the attention of court or counsel, that fact does not render the indictment defective for uncertainty.

6. **Conspiracy ☞43(6)—Indictment held not uncertain as to offenses to be committed.**

   An indictment charging defendants with an unlawful conspiracy continuing for a long period of time, the purpose of which was the com-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mission of a large number of offenses in violation of National Prohibition Act, tit. 2, and the unlawful transportation of intoxicating liquors from and to definite places named, in the maintaining of a specified place where intoxicating liquors were kept for sale, in the unlawful possession of intoxicating liquors in a certain designated place, and the unlawful selling of intoxicating liquor as a beverage at a certain place, was not rendered indefinite and uncertain as to the purpose of the conspiracy because it charged that such purposes included 300 offenses in the unlawful transportation of intoxicating liquor, and 3,000 separate offenses in the unlawful sale of liquor, since, even if uncertain in those respects, the charges of maintaining a nuisance and of unlawful possession were sufficiently certain to support the indictment, and to advise the defendants of the nature and cause of the accusation against them as required by Const. Amend. 6.

7. **Criminal law ⬥1152(2)—Jury ⬥85—Trial judge has discretion to determine competency of jurors.**

The trial court is vested with discretion to determine the competency of a juror, and his judgment in that respect will not be reversed, except for an abuse of that discretion.

8. **Jury ⬥133—Juror's opinion as to freedom from impartiality is not binding.**

In the determination of a juror's competency, the court should consider the statement made under oath by the juror himself with reference to his impartiality, but the juror's opinion is not binding on the court.

9. **Jury ⬥97(3)—Ordinary membership in law and order league does not disqualify as juror.**

Mere membership in a law and order league, or in the Anti-Saloon League, does not necessarily disqualify a man to sit as juror in a trial involving a violation of the National Prohibition Act, unless the cause is being prosecuted or promoted by a local association in which he is a member, or the juror has voluntarily contributed funds in furtherance of the prosecution, or is liable to assessment for the expenses thereof.

10. **Criminal law ⬥1169(5)—Withdrawal of evidence procured by illegal search warrant held to cure error in admission.**

Error in admitting evidence procured by means of an unlawful search warrant was cured by the subsequent withdrawal of the evidence by language which was clear, specific, and direct, and from which the jury could not fail to have understood exactly what evidence was withdrawn from their consideration.

11. **Criminal law ⬥1169(5)—Withdrawal of evidence generally cures error in admission.**

The general rule is that, where evidence erroneously admitted is withdrawn from the consideration of the jury by direction of the presiding judge, such direction cures any error which may have been committed by its introduction, though there are exceptional instances in which the withdrawal of such evidence does not cure the error.

12. **Criminal law ⬥1137(5)—Defendant cannot speculate on favorable verdict, and then claim withdrawal did not cure error.**

Where the defendant, against whom alone evidence procured by an illegal search warrant was inadmissible, did not object to proceeding with the trial, but, on the contrary, objected to the entry of a nolle by the district attorney with respect to him, he could not, after conviction, claim that the withdrawal did not cure the error, since he could not gamble with the verdict of the jury, and after conviction raise the objection.

13. **Criminal law ⬥394—Only owner of premises searched can object to evidence procured by unlawful search.**

In a prosecution of 14 defendants for conspiracy to violate the National Prohibition Act, only that defendant who was the owner of and in control of the premises searched under an illegal search warrant

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

could object to the evidence procured by such warrant, and he could not claim the benefits of Const. Amends. 4 and 5, on behalf of his co-defendants.

**14. Criminal law** ⟂⟂723(1)—**District attorney can present government's side of the case in forcible language.**

Though arguments by a district attorney calculated to inflame the jurors and prejudice them against accused are not regarded with favor, the district attorney has the right, and it is his duty, so long as he confines his argument to the evidence, to present the government's side of the case in forcible and direct language.

**15. Criminal law** ⟂⟂723(3)—**Argument of district attorney held proper.**

In a prosecution for conspiracy to commit a very large number of offenses against the National Prohibition Act, the district attorney had the right to assert the truth of the testimony offered by the government, and to claim that it established beyond a reasonable doubt a wholesale reckless attempt to contravene the law and Constitution of the United States, and to call the attention of the jury to the fact that the conspiracies, involving many individuals and contemplating continuous flagrant violations of the law, imperil the efficiency of the government in the maintenance of law and order, and that a failure to maintain law and order would place the United States in a class with the countries he mentioned as distressing examples of such failure.

**16. Criminal law** ⟂⟂719(1)—**Argument can refer to World War, though there was no evidence thereof.**

The recent World War is a historical fact, within the knowledge of all civilized peoples, and the district attorney could refer thereto in argument, since he can refer to facts of which the court will take judicial notice, though no evidence was introduced in relation thereto.

**17. Conspiracy** ⟂⟂43(12)—**Attempts to bribe government officer held admissible to show conspiracy.**

In a prosecution of numerous defendants for a conspiracy to violate the National Prohibition Act, evidence that two of the defendants had attempted to bribe a federal prohibition director in the furtherance of the alleged conspiracy was competent, although the indictment did not charge such bribery as an overt act.

**18. Conspiracy** ⟂⟂47—**May be proved by circumstances.**

Overt acts may or may not be of such character as will tend to prove a pre-existing conspiracy, but in either event the conspiracy may be established by proof of attendant facts and circumstances, from which the natural inference arises that the defendants were engaged in the unlawful conspiracy charged in the indictment.

In Error to the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

George Remus, Harry F. Brown, George Connors, John Gehrum, Clem L. Herbes, Clarence Bell, Ernest A. Brady, Charles Wissman, George Gillenbeck, George Dater, Harry Gardewing, Harry Boyd, Elmer Roth, and George Klug were convicted of conspiracy to violate the National Prohibition Act, and they each separately bring error. Affirmed.

Elijah N. Zoline, of New York City, Arthur B. Bensinger, of Louisville, Ky., Edward P. Moulinier, of Cincinnati, Ohio, and Chester H. Krum, of St. Louis, Mo. (Leonard Garver, Jr., and David Lorbach, both of Cincinnati, Ohio, on the brief), for plaintiffs in error.

⟂⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thos. H. Morrow and Richard T. Dickerson, Sp. Asst. Attys. Gen. (Benson W. Hough, U. S. Atty., of Cincinnati, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. These separate writs of error are directed to the same judgment, are based upon the same record, involve substantially the same questions, with but two or three exceptions and were heard and submitted together. The plaintiffs in error, hereinafter called defendants, were jointly indicted upon seven counts; the first charging a conspiracy unlawfully to transport, possess, and sell large quantities of intoxicating liquors, and to maintain a place where intoxicating liquor was to be kept for sale as a beverage, all of said offenses being contrary to and in violation of the provisions of title 2 of the National Prohibition Act (41 Stat. 307).

Demurrers were overruled as to this count, and sustained as to the remaining six counts. Further proceedings were had upon the first count. Pleas of not guilty were entered. Upon the trial of the cause the jury returned a verdict of guilty against each of the defendants named in the first count of the indictment. A motion for new trial was overruled and sentence imposed.

It is insisted that the court erred to the prejudice of the defendants in overruling the demurrer to the first count of this indictment, for the reason that it does not charge the actual formation of the conspiracy upon any definite date, or the commission of the overt acts alleged in the indictment subsequent to the formation of the conspiracy. This count of the indictment charges, among other things, that the defendants—

"continuously throughout the period of time from April 20, 1919, to the day of the finding and presentation of this indictment, * * * unlawfully and feloniously have conspired, combined, confederated and agreed together and with divers other persons to said grand jurors unknown, to commit during said period of time a large number of offenses against the United States," etc.

This averment is followed by the number and description of the offenses contemplated by the conspiracy, after which it is alleged that the overt acts charged in the indictment were committed by one or more of the defendants "to effect the object of said unlawful and felonious conspiracy, combination, confederation and agreement."

[1] The allegations of this indictment first above quoted clearly charges an existing conspiracy entered into between the defendants on April 20, 1919, and continuing until the time of the finding and presentation of the indictment, not for the commission of one offense only, but for the commission of a continuity of offenses in violation of title 2 of the National Prohibition Act by the unlawful transportation, possession, and sale of intoxicating liquor. Rudner et al. v. U. S. (C. C. A.) 281 Fed. 516. If the purpose of the conspiracy contemplated the commission of one offense, the continuance of the result of the commission of that offense would not necessarily continue the conspiracy; but if the purpose of the conspiracy contemplates, as charged in this indictment, continuous co-operation of the conspirators in the perpetra-

tion of a series of offenses against the United States within the scope and purpose of the conspiracy, it is in effect "a partnership in criminal purposes," and continues until the time of its abandonment, or the final accomplishment of its purpose. U. S. v. Kissel et al., 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168.

[2] It was not necessary, however, for the government to prove that this conspiracy was formed on the exact date averred in the indictment. Section 1025, R. S. U. S. (Comp. St. § 1691); Ledbetter v. U. S., 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162; U. S. v. Aviles et al. (D. C.) 222 Fed. 474.

[3] Under the provisions of section 5440, R. S., the crime of conspiracy is not complete without the commission of an overt act in furtherance of the unlawful purpose contemplated by the conspiracy. The further averments of the indictment last above quoted specifically charges that the overt acts alleged were committed to effect the object of said unlawful and felonious conspiracy. Certainly this language is subject to no construction other than that the overt acts charged were committed after the conspiracy was formed, while it was still in existence, and in furtherance of its unlawful purpose.

[4] It further appears that all of the overt acts averred in the indictment were of date long subsequent to the formation of the conspiracy as charged in the indictment. Under the allegations of this indictment it was incumbent upon the government to prove beyond a reasonable doubt that these defendants, or two or more of them, entered into a conspiracy for the unlawful purpose charged on or after the 20th day of April, 1919, and prior to the commission, in furtherance of the conspiracy, of the overt acts alleged in the indictment and that one or more of such overt acts were committed by one or more of the defendants after the conspiracy had been formed, and while it was still in existence, and in furtherance of the purposes of that conspiracy. Hyde et al. v. U. S., 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

[5] It is also claimed that this indictment is void for uncertainty, in that it fails to advise the defendants of the nature of the accusation against them. Upon this proposition it is contended by the defendants that an indictment alleging a conspiracy beginning April 20, 1919, and continuing without interruption until April 15, 1922, shows "a continuity of 'breathing together' unheard of in the annals of old. Section 5440, R. S. U. S." It may be that this indictment does charge the most extraordinary conspiracy, both as to the time of its continuance and the number of offenses for the commission of which it was formed, that has ever come to the attention of court or counsel; nevertheless an indictment is not defective for uncertainty merely because it alleges an extraordinary and unusual state of facts.

[6] Nor is there any uncertainty in the allegation of the indictment as to the unlawful purposes for which this conspiracy was formed. While perhaps it is not required in an indictment for conspiracy to describe the offense for the commission of which the conspiracy was formed with the same particularity as is required in an indictment charging the specific offense only, for the reason that it is not necessary to conviction on an indictment for an unlawful conspiracy to prove that

the offense alleged as the object and purpose of the conspiracy was actually committed, yet this count of the indictment does allege, not mere legal conclusions, but facts from which it appears that the object and purpose of the unlawful conspiracy were the commission of certain definite offenses against the United States, punishable under the statutes of the United States and these offenses are not charged in the vague, uncertain way disapproved by the Supreme Court in U. S. v. Cruikshank et al., 92 U. S. 542, 23 L. Ed. 588, but are separated and classified with reference to their nature and character with such particularity as to prevent any confusion or misunderstanding as to the exact offenses contemplated by this conspiracy, or as to the particular law declaring the offenses and providing the punishment therefor.

This indictment does advise the defendant and each of them that they are charged with unlawful conspiracy continuing for a long period of time; that the purpose of this conspiracy was the commission of a large number of offenses in violation of title 2 of the National Prohibition Act: First, in the unlawful transportation of intoxicating liquors from and to definite places named; second, in the maintaining of a certain specified place where intoxicating liquors were kept for unlawful sale; third, the unlawful possession of intoxicating liquors at a certain designated place; and, fourth, the unlawful selling of intoxicating liquor as a beverage at a certain definite place.

The fact that this indictment charges that the unlawful purpose of the conspiracy included 300 offenses in the unlawful transportation of intoxicating liquor from and to the places mentioned, and 3,000 separate offenses in the unlawful sale of intoxicating liquor for beverage purposes at the place specified, does not make the indictment indefinite or uncertain as to the unlawful purposes of this conspiracy; but, even if it did, there were two other definite and certain offenses charged as the purpose of this conspiracy—one the "maintaining at Death Valley farm * * * a place where intoxicating liquors * * * were to be kept by said defendants and sold by them in violation of title 2 of the National Prohibition Act." Another was the unlawful possession "at said Death Valley farm of intoxicating liquor otherwise than was authorized by the National Prohibition Act." Certainly these two offenses were described with such certainty and detail that the indictment would not be vulnerable to a demurrer, even if the averments as to the other offenses were too indefinite and uncertain to permit the introduction of proof in support thereof.

For the reasons stated, this count of the indictment is sufficiently definite and certain, without resort to the overt acts charged, and without resort to the bills of particulars filed, to advise the defendants of the nature and cause of the accusation against them as required by the Sixth Amendment to the federal Constitution.

It is also claimed that the court erred in overruling the defendant's challenges for cause to jurors Marlatt, Thomas, Wymer, and Higgins. The objection to these jurors was based upon the assumption that they were each members of, or intimately connected with organizations devoted to prosecutions of offenses against laws relating to the prohibition of the manufacture, transportation, and sale of intoxicating liquor

as a beverage. This assumption is not warranted by the evidence as to jurors Marlatt and Higgins. It is also claimed by counsel for the government that the record is in error as to the status of juror Thomas. However that may be, the question sought to be made on behalf of defendants is fairly presented by their exceptions to the overruling of the challenge for cause to the juror Wymer. Wymer testified on his voir dire that he resided in a village outside of Cincinnati; that he was a member of the local Law and Order League of his home village, but that he was not a member of the Anti-Saloon League. Upon inquiry by the court, he testified that his membership in the Law and Order League would not tend in any wise to sway or influence his judgment; that he would try the case solely upon the law and the evidence, and give to the defendants the presumption of innocence until they were proven guilty beyond a reasonable doubt. The other jurors above named testified in like manner in reference to their ability to give the defendants a fair and impartial trial, and to give to the defendants the presumption of innocence until proven guilty beyond a reasonable doubt.

While it does not appear that the defendants peremptorily challenged these jurors, nevertheless it does appear that neither of them were members of the jury that was finally impaneled and sworn. Before swearing the jury, the court inquired if there was any challenge for cause against any juror then impaneled, and no objection was offered. The court then inquired of the jurors if there was any reason known to either of them that would tend to affect his judgment or sway him for or against either of the parties in the case, or prevent or tend to prevent him from rendering a true verdict according to the law and the evidence. There being no response from the jurors to this question, the court again inquired of counsel if there was any reason to be proposed by either side why the jury should not be sworn, and, no objection being offered, the court directed the clerk to swear the jury. It further appears from the record that the defendants had then exhausted all their peremptory challenges permitted by law.

[7, 8] The trial court is vested with the discretion to determine the competency of a juror, and his judgment in that respect will not be reversed, except for an abuse of that discretion. Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708; Ry. Co. v. Hill, 237 U. S. 208, 214, 35 Sup. Ct. 575, 59 L. Ed. 918. In the determination of that question the court should consider the statements made under oath by the juror himself in reference to his impartiality and his freedom from prejudice, but the juror's opinion upon these questions are not binding upon the court.

[9] None of the American cases cited by counsel for plaintiff in error go to the extent of holding that membership in a law and order league, or in the Anti-Saloon League necessarily disqualifies a juror, unless the criminal cause on trial is being prosecuted or promoted by a local association of which he is a member, or such juror has voluntarily contributed funds in furtherance of such prosecution, or as a member of such society is liable to assessment for the expenses thereof. The statement in Com. v. Livermore, 4 Gray (Mass.) 18, was entirely obiter. Indeed, it does not appear that the society there in question was not a

purely local one, and thus directly connected with the prosecution in question.

In Com. v. Moore, 143 Mass. 136, 137, 9 N. E. 25, 58 Am. Rep. 128, the juror was a member of the league of the town where the offense charged was alleged to have been committed, and certain witnesses were agents of the league and furnished by it with money to pay the expenses in carrying on their work. The juror was a member of a local association which employed complainant to induce defendant to violate the law, in order that he might prosecute the defendant therefor, and, as the court said, he was the agent of the juror for this special purpose. He, with his associates, had selected Giguel as a proper person to induce the defendant to violate the law, prosecute him for such violation, and go before a jury as a witness worthy of belief.

In Blackwell v. State, 76 Fla. 124, 79 South. 731, 1 A. L. R. 502, the juror had contributed to a fund for prosecuting the very case on trial. In Jackson v. Sandman, 18 N. Y. Supp. 894, 896,[1] the same was true. In State v. Fullerton, 90 Mo. App. 411, the society of which the juror was a member had employed the witnesses for the state to go from St. Joseph to Princeton and to make the purchase of the very liquor in question. It may be noted that neither Crawford v. U. S., 212 U. S. 183, 196, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392, nor Coughlin v. People, 144 Ill. 140, 33 N. E. 1, 19 L. R. A. 57, involved the question under discussion. The Crawford Case holds simply that an employé of the United States is not a qualified juror in a case where the defendant is on trial for conspiracy against the United States. The Coughlin Case relates to the authority of the trial judge to accept a juror, notwithstanding his prejudice against a society to which the defendant belongs. Among other things, the case seems to hold that, where a juror says he can render an impartial verdict, the question becomes one for the trial court's determination.

As opposed to the contention of plaintiff in error, there is a long line of authorities to the effect that membership in a society, such as the Law and Order League or the Anti-Saloon League, does not per se render the juror incompetent, where the prosecution is in a different locality and in no way subject to the local society of which the juror is a member. In 16 Ruling Case Law, pp. 277 et seq., §§ 94 to 96, the general rule is distinctly stated to be that the mere fact that one is a member of an association for the detection and suppression of crime, pays dues thereto, and is liable to assessment thereby does not necessarily disqualify him as a juror in the absence of a showing that the association to which he belongs, is in some manner connected with or interested in the prosecution of the particular case. The text is supported by a number of authorities. See Guy v. State, 96 Md. 692, 696, 54 Atl. 879, 880, where, however, it is said that:

"Members of such leagues or organizations should not be permitted to serve upon a jury in those cases in which the league is in control of, or by employment of special counsel actively participates in, the prosecution."

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 64 Hun, 634.

In Boyle v. People, 4 Colo. 177, 179, 34 Am. Rep. 76, it was held that members of an association combined to check a certain crime (in that case cattle stealing) are not per se incompetent as jurors in the trial of such crime. In Starke v. State, 17 Wyo. 55, 96 Pac. 148, 17 Ann. Cas. 222, it is held that one who was called as juror on the trial of a defendant charged with stealing sheep was a contributing member of an association of wool growers, etc., which has for one of its objects the detection and prosecution of persons for stealing sheep, does not necessarily disqualify him as a juror, in the absence of a showing that the association is in some manner connected with or interested in the prosecution of the case on trial.

In State v. Sultan, 142 N. C. 569, 573–574, 54 S. E. 841, 843 (9 Ann. Cas. 310), jurors were challenged because members of the Anti-Saloon League; it was said that the authorities were "quite clear that the challenges for cause were properly disallowed, the jurors having taken no part in prosecuting or aiding in the prosecution of the defendant." The court there cites Musick v. People, 40 Ill. 268, as holding that the fact that persons belong to an association whose object is to detect crime, raises no presumption that they are prejudiced against a person charged with a criminal offense, or that they would not be able to give him a fair and impartial trial; also State v. Wilson, 8 Iowa, 407, to the effect that the fact that a person called as a petit juror on the trial of an indictment in which defendant is charged with stealing a horse was a member of an association or organization for the prosecution of persons generally arrested for horse stealing, will not disqualify him as a juror; as well as Koch v. State, 32 Ohio St. 353, which was an indictment for selling intoxicating liquor in violation of law, where the court held that the fact that a person has subscribed funds for legitimately suppressing crime does not disqualify him from sitting on the grand jury, nor is it ground for disqualification that he has evinced a desire or purpose to enforce the law. See, also, in this connection, State v. Flack, 48 Kan. 146, 29 Pac. 571; Scott v. Chope, 33 Neb. 41, 82, 94, 49 N. W. 940.

[10] It is further claimed on behalf of defendants that the court erred in the first instance in denying the motion of defendant Gehrum to preclude the government from offering in evidence the property seized upon a search warrant, and from using the information derived therefrom, and for the return of the property. In view of the conclusion reached by this court as to what transpired later in this case, we think it unnecessary to discuss or decide the validity of the search warrant or the question of the admissibility of this evidence. The District Court later withdrew all the evidence in relation to the search and seizure and excluded all the physical property found and seized by the officers in the execution of that warrant. If it were conceded that this evidence was improperly admitted, we think the error was fully cured by its withdrawal from the consideration of the jury.

The defendants then moved the court to conduct a hearing "to ascertain what evidence and what hearings have been produced by the government as the result of the clews and the information derived from this official seizure." The court thereupon specifically inquired of the

district attorney whether any of the testimony given by witnesses other than those present at the time of the search and seizure, naming each witness in turn, had been derived from the unlawful search. These specific questions by the court were answered by the district attorney in the negative, except that it was presumably after looking at the books at Death Valley that the government agents ascertained the source from which Meyer Rufkin was obtaining his supply of liquor. Thereupon the testimony of Meyer Rufkin, who had testified on behalf of the government, was withdrawn and the jury was directed to disregard his testimony. Under the facts and circumstances disclosed by this record, the overruling of defendants' motion to conduct a special hearing was not prejudicial error.

It is contended, however, that the withdrawal of this evidence from the consideration of the jury did not cure the error. A number of witnesses had testified with reference to this search and seizure made at Death Valley, the place at which it is claimed by the government, this contraband liquor was stored until it could be sold. That was one of the features of this case that was wholly separate and apart from all the other transactions to which testimony was directed. The language used by the court in withdrawing this evidence was clear, specific, and direct. The jury could not fail to have understood just exactly what evidence was withdrawn from their consideration.

[11] The general rule is that where evidence erroneously admitted is withdrawn from the consideration of the jury by the direction of the presiding judge, such direction cures any error which may have been committed by its introduction. Throckmorton v. Holt, 180 U. S. 552, 567, 21 Sup. Ct. 474, 45 L. Ed. 663; Hopt v. Utah, supra; Pennsylvania Co. v. Roy, 102 U. S. 452, 26 L. Ed. 141. It is also true that in exceptional instances the withdrawal of evidence improperly admitted does not cure the error, but this does not appear to be such a case.

[12] It is not claimed that the statement made by the court at the time this evidence was withdrawn was not sufficiently explicit and specific to direct the attention of the jury to the identical evidence that was withdrawn from its consideration; nor did the defendants request any further charge or directions in reference thereto; nor did they or either of them object to proceeding with the trial. On the contrary, when the district attorney then and there offered to nolle the indictment against Gehrum, the only one of the defendants who was in position to assert that his constitutional rights had been invaded by an unlawful search and seizure, his counsel objected to having the indictment nolled against him, on the theory that he had been placed in jeopardy and was entitled to a verdict of not guilty. If the defendants were then of the opinion that the withdrawal of this evidence did not cure the error, if any, in its admission, it was their duty to present that question to the trial court. They could not proceed with the trial of this case without objection, and gamble with the verdict of the jury. Hammerschmidt et al. v. U. S. (C. C. A.) 287 Fed. 817; U. S. v. River Rouge Imp. Co. (C. C. A.) 285 Fed. 111, 114.

[13] Upon any theory, this evidence was admissible as against all

of the defendants except Gehrum. A separate brief is filed in his behalf, which deals largely with this particular question. The warrant upon which this search and seizure was made purported to authorize a search of the premises of the defendant John Gehrum. So far as appears by this record, no other defendant claims to be interested either in the premises searched or the property seized. John Gehrum filed this motion, which is verified by his affidavit, and in which he avers that the property seized is his property, and was taken from him by an illegal search warrant, which among other defects did not particularly describe the premises and place to be searched. If this search warrant was illegal, and the search and seizure constituted an invasion of John Gehrum's constitutional rights, it certainly could not affect the constitutional rights of the other defendants, the privacy of whose homes was not invaded, nor could they be heard to complain that the constitutional rights of Gehrum had been forcibly and unlawfully violated. Nor could Gehrum claim the benefits of the Fourth and Fifth Amendments on behalf of his codefendants. Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159; Haywood v. U. S. (C. C. A.) 268 Fed. 795, 803.

This evidence was excluded by the court, not because it was not relevant evidence, but rather upon the theory that in the obtaining of this evidence Gehrum's constitutional rights had been invaded, and for that reason he was entitled to the return of the property, and could not be compelled to produce it as evidence against himself. Gehrum, however, is in no position to complain because he insisted upon proceeding with the trial, notwithstanding the district attorney offered to enter a nolle prosequi as to him. The other defendants never had any valid ground of objection to the introduction of this evidence. If Gehrum had not been a codefendant, there would have been no occasion to withdraw this evidence or these exhibits from the consideration of the jury.

[14] It is also insisted upon the part of the plaintiffs in error that the district attorney was guilty of misconduct in argument; that this misconduct, unrebuked by the court, improperly influenced the jury. This court has never regarded with favor arguments by a district attorney calculated to inflame the minds of the jurors and prejudice them against the accused. On the other hand, the district attorney has the right, and it is no doubt his duty, so long as he confines his argument to the evidence in the case, to present the government's side of the case in forcible and direct language. As suggested in the brief of counsel for plaintiffs in error this is an extraordinary case. If the witnesses for the government testified truthfully, then this conspiracy contemplated, not only a reckless disregard for law, but also a defiant challenge to the power of organized government to compel obedience to existing laws.

[15] The district attorney had the right to assert the truth of the testimony offered by the government, and to claim in argument that the government had established by this evidence, beyond a reasonable doubt, "a wholesale reckless attempt to contravene the law and Constitution of the United States." Nor was it misconduct on the part

of the district attorney to call the attention of the jury to the fact that conspiracies involving many individuals and contemplating continuous flagrant violations of the law and defiance of the provisions of the federal Constitution imperil the efficiency of a government in the maintenance of law and order, and that a failure to maintain law and order would place the United States in a class with the countries he mentioned as distressing examples of such failure.

[16] The recent World War is a historical fact, within the knowledge of all civilized peoples. The reference by counsel to historic facts, or to facts of which a court will take judicial notice, although no evidence was introduced in relation thereto, is not misconduct. Ry. Co. v. York, 128 Ga. 687, 58 S. E. 183; Wilson v. Van Leer, 127 Pa. 371, 17 Atl. 1097, 14 Am. St. Rep. 854; Jacqueline v. Morning Journal Ass'n, 39 App. Div. 515, 57 N. Y. Supp. 299. Counsel also referred to the war record of a member of the jury, but the court held that the district attorney exceeded the limits of argument in this respect, and withdrew these remarks from the consideration of the jury. Dunlop v. U. S., 165 U. S. 486, 17 Sup. Ct. 375, 41 L. Ed. 799; Lanier v. U. S. (C. C. A.) 276 Fed. 699.

[17] There was also a separate brief filed on behalf of Clem L. Herbes, in which it is insisted that it was error for the court to admit evidence tending to show that some of these defendants had attempted to bribe government officers, and particularly that Gehrum and Herbes had attempted to bribe Burt C. Morgan, a federal prohibition director of Indiana; that except for this evidence there is no other evidence connecting Herbes with the conspiracy. While it is true, as claimed by counsel, that the indictment does not charge that the conspiracy formed was for the purpose of committing the offense of bribery, nevertheless it does charge that the conspiracy formed was for the purpose of unlawfully transporting, possessing, and selling intoxicating liquors in violation of title 2 of the National Prohibition Act. The evidence in relation to these attempted briberies tends to prove that the efforts to bribe government officials were in furtherance of the accomplishment of the unlawful purpose of the conspiracy charged in the indictment. If these attempted briberies had come to the knowledge of the grand jury, it might well have charged them as overt acts; but in proving a conspiracy the government is not confined to the overt acts charged in the indictment.

[18] On the contrary, it is insisted in this case on behalf of the defendants that the court erred in instructing the jury that it could consider overt acts done in furtherance of a conspiracy in determining whether or not there was a pre-existing conspiracy. Overt acts may or may not be of such a character as will tend to prove a pre-existing conspiracy. Parilla et al. v. U. S. (C. C. A.) 280 Fed. 761. In either event the conspiracy may be established by proof of attendant facts and circumstances from which the natural inference arises that the defendants were engaged in the unlawful conspiracy charged in the indictment. Davidson v. U. S. (C. C. A.) 274 Fed. 285, 287 and cases there cited.

There are a great number of other assignments of error urged upon the attention of this court in oral argument and in briefs of counsel,

especially in relation to errors in the admission of evidence, but it is impossible to discuss them all in detail in this opinion. We have, however, carefully considered every question presented by the record and briefs in this case, but have attempted a discussion of only the more important ones. It is sufficient to say that in the opinion of this court no error intervened in the trial of this cause to the prejudice of either defendant.

The judgment of the District Court is affirmed.

