## CHICCO et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1922.)

### No. 2001.

1. **Searches and seizures ⬿5—Petition for return of articles seized held insufficient.**

Petitions for return of property seized in alleged unlawful search were properly denied, where they contained no allegation that the property was the property of petitioners, and did not allege in what respect its possession by the government affected the interests of petitioners, and did not allege anything tending to show that its continued possession by the government, or the manner in which it was obtained, violated the constitutional rights of either petitioner, and no hearing was had upon the petitions, and no evidence introduced by petitioners.

2. **Constitutional law ⬿42—Petitioner could not object to seizure of property not taken from his premises.**

No constitutional right of petitioner was invaded by the seizure of papers taken from premises as to which he disclaimed connection or relationship.

3. **Constitutional law ⬿42—Petitioner could not object that taking from him of keys to premises violated constitutional right, where he had stored liquor without owner's permission.**

Petitioner could not complain that he had been obliged, on demand by federal officers, to deliver to them keys which he testified he had surreptitiously and unlawfully had made to enable him to occupy premises to which he had no right for the storage of liquor, although, by using such keys, his liquor was found in such premises, for the prohibition of unlawful search and seizure in Const. Amends. 4, 5, could only be invoked by the owner of the premises, not by one clandestinely occupying them.

4. **Intoxicating liquors ⬿238(1)—Evidence held insufficient to show unlawful possession of liquors.**

In prosecution for unlawfully possessing liquors, evidence *held* to show that motion for directed verdict in favor of one defendant should have been granted.

Woods, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Joseph M. Chicco and Willie Hills were convicted of unlawfully possessing and transporting intoxicating liquors, and bring error. Reversed as to Chicco, and affirmed as to Hills.

J. Waties Waring, of Charleston, S. C. (Waring & Brockinton, of Charleston, S. C., on the brief), for plaintiffs in error.

Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C.

Before KNAPP and WOODS, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. The plaintiffs in error, Joseph M. Chicco and Willie Hills, together with one W. A. Murphy, were jointly indicted in the District Court of the United States for the Eastern District of South Carolina, at the November term, 1921, for unlawfully

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

possessing and transporting intoxicating liquors. After a trial by jury, the defendants Chicco and Hills were found guilty, and the defendant Murphy acquitted, and upon this verdict judgment was duly entered by the District Court.

There are two aspects of the case, which we will discuss briefly. The first relates to the refusal of the court to suppress certain evidence obtained as a result of a search by the prohibition officers immediately prior to the arrests; the second arises out of the defendants' request for a directed verdict upon the theory that there was not introduced sufficient legal evidence to warrant a conviction.

Hills, one of the defendants, occupied a storeroom known as No. 85½ Market street in the city of Charleston, S. C., where he conducted a soft drink establishment, having a license and telephone in his own name. The storeroom thus occupied by him, and the adjoining storerooms, Nos. 83, 83½, and 85, were the property of Vincent Chicco, the father of the defendant Joseph M. Chicco, and all of the latter were unoccupied at the time of the arrests. On the evening of the raid the officers, with a search warrant, properly issued by the United States Commissioner, describing the premises to be searched as No. 85½ Market street, appeared at that number, and, finding Willie Hills in charge, proceeded to search the premises in an effort to find contraband liquor. Finding no liquor on these premises, they demanded, and obtained from Hills, the keys to No. 85 Market street, which he surrendered. These keys they used in obtaining entrance into the latter place, and upon searching it they found concealed in the wall separating it from No. 83½ a considerable quantity of intoxicating liquors, which Hills immediately claimed as his property. On the return of the officers to No. 85½ they found lying on the desk in the office three papers, one a post card addressed to J. M. Chicco, the second a receipt book in the name of Chicco, and the third a bill for lumber furnished to Chicco by the Anderson Lumber Company. Having arrested Hills and taken him to jail, a warrant was procured for Chicco, and he was later arrested at his place of business in another part of the city.

[1-3] After the indictment had been found, but before the defendants were arraigned, or had pleaded to the same, separate petitions were filed on behalf of Chicco and Hills; as to the former, asking for the return or suppression of the post card, receipt book, and lumber bill found on the premises, and as to the latter, for the return of the keys obtained from him and used by the officers in the search of the adjoining premises. The petition in each case was refused by the presiding judge, to which action the defendants severally excepted, and assign this action of the court as error. We think it is perfectly clear that the action of the court in both instances was right. The petition in neither case set out any ground for either the return or the suppression of the articles mentioned. In the petition of Chicco, the grounds relied upon were that the search warrant was not properly issued, in that it failed to specify the property to be searched, and that the papers seized were not, in themselves, unlawful, and were papers in which the government had no interest; in the case of Hills, that the keys were obtained from him, on the demand of the officers, on a

search warrant not issued in compliance with the law, in that the warrant failed to specify the property to be searched for, and upon other grounds similar to those set out in the case of Chicco. There was no allegation in either petition that the property which the court was thus asked to return was the property of either of petitioners, nor was it alleged in what respect its possession by the government affected the interests of the defendants; nor was anything alleged tending to show that its continued possession by the government, or the manner in which it was obtained, violated the constitutional rights of either defendant. No hearing upon the petition was had, and no evidence introduced by either defendant, and therefore it was, in our opinion, clearly the duty of the court, at this stage of the case, to refuse to grant the petitions, reserving the defendants' rights, respectively, in the trial of the case, to seasonably object to the introduction of any evidence, prejudicial to their rights, which had been unlawfully obtained—and this the lower court did, submitting to the jury, on proper instruction, the question of the manner in which the keys to the adjoining building were obtained, which was the only controverted fact raised, either on the petitions or on the motion to reject the evidence.

In the trial no effort was made by the government to use the paper evidence found in Hills' office, and addressed to Chicco, until the defendant Chicco had gone on the stand as a witness in his own behalf. He was then asked if the papers were his, and he denied their ownership or any interest in them, except as to the receipt book, which he claimed to have had some time before, but to have lost. He does not claim, nor pretend, that they were taken from his person, or that they were taken from property belonging to him, or occupied by him either as his residence or as his office, or in any other capacity. On the contrary, he particularly disclaimed any connection with or relationship to the premises from which they were obtained. It is difficult, therefore, to understand upon what possible theory it can be said that their possession and use by the government, under the circumstances, was an invasion of his constitutional rights. In the case of Hills, the keys which he delivered to the officers, upon their demand, were keys which he, himself, testified he had surreptitiously and unlawfully had made for the purpose of enabling him to occupy premises to which he had no right for the storage of liquor. Without the keys the officers could have obtained access to the premises, and without complaint on his part, for, conceding that the designation in the search warrant of the premises to be searched as No. 85½ Market street would not have availed the officers in a search of No. 85, and even conceding that a search of the latter premises would have been illegal and violative, as against the owner or occupant thereof, of the constitutional inhibition against unlawful search and seizure, still, as was said in the Silverthorne Case (D. C.) 265 Fed. 857, the prohibition there contained (Fourth and Fifth Amends. U. S. Const.) is for the benefit of the person or individual whose rights have been invaded, and, if that be correct, the only person who could have invoked this protection was the owner of the property, the elder Chicco, and certainly not the person

who had unlawfully and clandestinely occupied it as a cache for contraband liquor.

We think it is perfectly clear, from what has been already said, that no constitutional right of either defendant was violated in the respects mentioned, and that, therefore, no error prejudicial to them, or either of them, was committed by the lower court.

[4] We come now to discuss the other feature of the case, namely, whether the motion for a directed verdict should have been granted as to either defendant. In the case of Hills, the question should, of course, be answered in the negative, for upon the discovery of the whisky he not only immediately claimed ownership thereof, but, in the trial of the case, repeated this claim, without any attempt to show lawful possession. His conviction, therefore, followed as a matter of course. But in the case of Chicco a different condition exists. The premises in which the whisky was found did not belong to him, and so far as the evidence shows he had no control of the property. He was in business in another part of the city of Charleston, while his residence was in still another part. The whisky seized by the officers had on it no mark or sign identifying him in any way with its ownership or control. He was not on the premises at the time the raid was made, and, except that he had been at No. 83½ Market street some time before the raid for the purpose of having the property repaired, at his father's request, there was no evidence showing his use, occupancy, or control of the premises, nor, indeed, that he had been at them at all within a reasonable time before the finding of the liquor. The entire case, so far as he is concerned, consisted of the introduction in evidence of the three papers mentioned above, which, as has been heretofore stated, were found, not in the room in which the liquor was found, but in the office of the room occupied by Hills. The papers themselves were thoroughly innocuous. There was nothing about them to indicate or suggest any connection with the liquor, and their whole effect could have had no greater weight than as tending to prove that he had, at some time shortly prior to the raid, left them where they were found; and this presumption is, at most, but prima facie, and hardly attains that dignity upon which the conviction for a crime may alone depend. But, even assuming that they were left there by him, how can such evidence be said to create an irresistible presumption of guilt, or any presumption of guilt? Hills, who claims possession of the liquor, was in possession of the premises, by right of his tenancy of No. 85½, and by virtue of his illegally obtained key to No. 85. He claims the liquor as his own, and only the suspicion of the arresting officers that Chicco was his partner in the unlawful enterprise, supported alone by the finding in a separate room of three inconsequential and unimportant papers, developed for submission to the jury. In the case of Murphy, the other defendant, the jury acquitted him, yet he was seen driving from the place when the officers arrived, and his coat was found hanging in the office. The case against Chicco had neither of these circumstances to weigh against his presumption of innocence, and in both cases there was altogether lacking

that degree of certainty of guilt which would alone justify a conviction. Indeed, we may go further and say that we think there was no real substantive evidence on which the case of Chicco should properly have been submitted to the jury, or, if submitted to the jury on proper instruction as to the burden of proof imposed upon the government in criminal cases, and the presumption of innocence in the accused, no other result could or ought to have followed than a verdict of acquittal. We feel therefore constrained to conclude that the motion for a directed verdict as to Chicco should have been granted, or that, in any event, on the verdict as returned, the court should, of its own motion, have set it aside and granted a new trial. Since this was not done, we must affirm as to Hills, and reverse and grant a new trial as to Chicco.

Reversed as to Chicco.

Affirmed as to Hills.

WOODS, Circuit Judge (dissenting). I am unable to agree that the District Judge should have directed the jury to acquit the defendant Chicco for lack of evidence.

First. It is significant that neither in the assignments of error nor in the argument did the learned counsel contend that the evidence actually admitted did not make a case for the jury on the issue of the guilt of Chicco as well as the other defendants. As appears from the twenty-fifth assignment of error and the argument, the contention in the District Court and in this court was that incompetent evidence was admitted, that it should have been struck out, and that without this alleged incompetent evidence the remaining evidence was not sufficient to support a verdict of conviction. The holding of this court that the motion to exclude the evidence was properly refused leaves no basis in the assignments of error for a reversal on the ground that a verdict of acquittal should have been directed.

Second. This court cannot set aside a verdict because in its opinion the evidence is not convincing of guilt beyond a reasonable doubt. If there is any competent evidence reasonably tending to prove guilt, the trial judge should submit the case to the jury; the issue of reasonable doubt is for the jury alone. Hays v. United States, 231 Fed. 106, 145 C. C. A. 294; Humes v. United States, 170 U. S. 210, 212, 18 Sup. Ct. 602, 42 L. Ed. 1011; Burton v. United States, 202 U. S. 344, 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362. There was no motion for a new trial; and, even if there had been, the refusal to grant such a motion made on the ground of insufficiency of evidence cannot be assigned as error.

Third. The record, as it appears to me, does not bear out the finding of the majority that the three papers found on the premises constitute the only evidence against Chicco. Appellate courts should exercise great caution in setting aside convictions for lack of evidence. The drama of the trial cannot be re-enacted in the appellate court. Evidence which appears light here may have been made truly weighty by its setting. The manner of the defendant and his witnesses, their silence or their denials in connection with other circumstances, may

be as convincing as positive testimony. The tangible and undisputed evidence against Chicco seems to me amply sufficient to support the verdict.

Numbers 83, 83½, 85, and 85½ Market street, Charleston, S. C., belong to the father of the defendant Chicco. They were separate, in that they had separate entrances from the street, but they had been used together as one establishment by the elder Chicco as a delicatessen shop and a place for the sale of liquor. In 1920 No. 83½ was used by defendant Chicco as a place of business. It was raided while in his possession, and a large quantity of bitters belonging to him was seized as intoxicating liquor and shipped back to the manufacturer. On September 7, 1921, prohibition officers with a search warrant for 85½ searched 83, 83½, 85, and 85½. They found concealed in the wall between 83½ and 85 six quarts, thirty-eight pints, and sixty-three half pints of whisky. The keys of 85 were demanded and received of Hills, a negro tenant occupying No. 85½. Upon discovery of the liquor, Hills asserted that he was the sole owner. Chicco himself was absent, but repair work under his direction was in progress, and the officers testified that this work was going on in the room where the liquor was found. In No. 85½, occupied by Hills who claimed the whisky, were found papers belonging to Chicco. One was a postal card dated September 5, 1921, addressed to Chicco at 83½ Market street; another a lumber bill against him, dated September 7, 1921, addressed to him at 85 Market street; and the third a receipt book of "Cypress Camp W. O. W.," in which his address was given as 85½ Market street. Chicco denied all knowledge of the postal card and the lumber bill, but admitted that the receipt book was his and kept by him. It was for conducting a liquor business at 85½ that he had been convicted with Hills about six years before. The officers testified that they had seen Chicco at the place where the liquor was found both before and since the raid, and that it was generally known as a place of Chicco, the defendant. Chicco failed to make any explanation of the presence of his business papers at 85½. All this tended to prove that Hills' claim to be running an independent business was pretentious, and that Chicco had a part in the business at 85½ and in the concealed liquor.

It seems clear to me that this was enough evidence to make the guilt of Chicco an issue of fact for the jury. I think the judgment should be affirmed.