### MacDANIEL v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1924.)

No. 3839.

1. **Criminal law ⬤⟿1169(2)—Error in admission of incompetent evidence harmless, where fact is otherwise proved.**

  Admission in evidence of an admission by one defendant, charged with others with conspiracy, if error, was harmless, where the admitted fact was proved by other evidence without objection.

2. **Criminal law ⬤⟿395—Objection to admission of documents as obtained through unlawful search not available to third party.**

  Objection to admission of documents on the ground that they were obtained through an unlawful search and seizure is available only to the person whose premises were unlawfully searched and whose documents were unlawfully seized.

3. **Criminal law ⬤⟿693—Right to object to admission of seized documents in evidence waived by delay in objecting.**

  Documents introduced in evidence against a defendant were obtained through a search of his premises under a search warrant issued by a judge of a state court in another state, in which search defendant voluntarily aided. They were introduced in evidence without objection on defendant's preliminary hearing and used before the grand jury. No application was made for their return or suppression, but when offered during the trial they were objected to on the ground that the search warrant was illegally issued. *Held*, that defendant had waived such objection, and could not raise it at that time and in that manner.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Criminal prosecution by the United States against J. L. MacDaniel. Judgment of conviction, and defendant brings error. Affirmed.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robt. R. Nevin and Earl H. Turner, both of Dayton, Ohio (Wellmore B. Turner and John W. Kalbfus, both of Dayton, Ohio, on the brief), for plaintiff in error.

James R. Clark, Sp. Asst. Atty. Gen. (Benson W. Hough, U. S. Atty., of Columbus, Ohio, on the brief), for the United States.

Before DENISON and DONAHUE, Circuit Judges, and WESTENHAVER, District Judge.

WESTENHAVER, District Judge. The indictment charges Charles C. MacNabb, M. J. Mulholland, and the plaintiff in error, J. L. MacDaniel with the crime of criminal conspiracy. The offense they conspired to commit is averred to be a violation of section 213, Criminal Code (Comp. St. § 10383), viz.: That they conspired to deposit and caused to be deposited, and knowingly sent or caused to be sent, letters, packages, and tickets concerning a lottery offering prizes depending in whole or in part upon lottery or chance, in the mails of the United States. This lottery concerning which the letters and packages were mailed need not be described in detail, because no criticism is made as to the sufficiency of the indictment, nor is it denied that the scheme was in fact a lottery. It is sufficient to say that the lottery was of the familiar kind popularly known as baseball pools. MacNabb and Mulholland entered pleas of guilty and were not put on trial. MacDaniel was tried alone, found guilty, and sentenced, and prosecutes error.

The errors assigned and relied on pertain to the admission of certain evidence, and certain observations with respect thereto by the trial judge in his charge. Of these, three only were urged in oral argument or call for separate comment.

[1] 1. Harry Hopf, a United States postal inspector, called on behalf of the government, identified Exhibits A and B, the lottery tickets specially set forth in the indictment, an envelope in which they were inclosed, and other inclosures, as having been delivered through the United States mail to one Henry Janser, at Hamilton, Ohio. He then testified that on August 9, 1921, MacNabb admitted to him that he had mailed this envelope and its contents to Janser. This testimony as to this admission was objected to and exception noted. The Court in his charge said:

"If there was a conspiracy, and the mails were to be used, and if MacNabb was a member of that conspiracy, then the mails were used, because it is uncontradicted here that MacNabb used them."

This comment was also excepted to on the ground that there is no evidence in the record showing that MacNabb ever used the mail. Comment is made in counsel's brief on a similar observation with respect to like documents mailed to Mike Doda and Frank Violet, but no exception was taken thereto, and no objection or exception appears to have been taken to the introduction of their testimony.

It is urged in support of this assignment of error that the only evidence of mailing is MacNabb's admission, and this admission, it is urged, was not competent against MacDaniel, the only person on trial. It is immaterial, in our view of the case, to determine whether MacNabb's admission was made in his own interest, or touching exclusive-

ly his own affairs, and not in furtherance of the alleged conspiracy, or was made after the conspiracy ended. If it was improper to receive this admission when offered, the error was later fully cured. Janser's testimony, introduced later, and not denied, shows clearly that this documentary evidence was in fact mailed or caused to be mailed by MacNabb. The envelope containing the inclosures was received by Janser from the United States mails in the presence of Hopf, and contained the usual post office stamps showing its transmission in the usual course. Among the inclosures was a return envelope addressed to MacNabb at his Dayton place of business, and a bill for the inclosed tickets and a blank form for reports of sales. Janser testifies that he had known MacNabb and had similar business transactions with him since early in the spring; that during the intervening period he had received similar mail matter through the mails; that he had filled out similar blank reports and inclosed them with remittances to Mac-Nabb's Dayton address; that for part of the period he had had similar transactions by going to Dayton and meeting MacNabb at the given address, obtaining like lottery tickets and blanks, delivering the same to MacNabb, and making settlements by paying money. In view of this long-continued course of business, and the personal participation therein of MacNabb, and the recognition by him that he was Janser's correspondent at Dayton, no other inference is permissible than that this last parcel of mail matter was either mailed or caused to be mailed by him.

[2] 2. The witness Hopf also produced and identified certain other lottery tickets, similar to Exhibits A and B, and reports and forms like those mailed to Janser, which he had obtained by search of MacNabb's place of business at Dayton. This search was made after MacNabb had been lawfully arrested, but pursuant to a search warrant which it is said is void, because issued without a sufficient supporting affidavit. Over objection and exception this evidence was admitted, on the theory that any objection to the manner in which the evidence was obtained was available only to MacNabb, who was not on trial, and was not available to MacDaniel.

Passing all questions as to the legality of the search and seizure, we agree in the view of the court below. 'An objection of this nature, it is well settled, is available only to the person whose premises have been unlawfully searched and whose documents have been unlawfully seized. See Remus v. United States (6 C. C. A.) 291 Fed. 501, 511; Haywood v. United States (7 C. C. A.) 268 Fed. 795, 803. In Wilson v. United States, 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Wheeler v. United States, 226 U. S. 478, 33 Sup. Ct. 158, 57 L. Ed. 309, and Johnson v. United States, 228 U. S. 457, 33 Sup. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263, it is held that officers of a corporation may be compelled to produce corporate records and documents, even after they have succeeded to the title thereto, and that the same may be used in evidence against them on a criminal charge. If Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, is thought to contain anything to the contrary, it must be regarded as limited by Essgee Co. v. United States, 262 U. S. 151, 157, 43 Sup. Ct. 514, 67 L. Ed. 917. In Schenck v.

United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470, it is like-
wise held that records and papers seized under a search warrant di-
rected against a Socialist headquarters may be used in evidence against
the secretary, from whose personal possession the same were taken. It
is likewise held that evidence obtained by an illegal search and seizure
by state officers or agents, not participated in by United States officers
or agents, is admissible in a criminal prosecution in the United States
courts against persons from whose possession they were thus wrong-
fully taken. Weeks v. United States, 232 U. S. 383, 398, 34 Sup. Ct.
341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177;
Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97;
United States v. O'Dowd (D. C.) 273 Fed. 600; Kanellos v. United
States (4 C. C. A.) 282 Fed. 461; Robinson v. United States (9 C.
C. A.) 292 Fed. 683. In Burdeau v. McDowell, 256 U. S. 465, 41 Sup.
Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, it was held that incriminat-
ing documents procured by private parties by burglarizing one's office
and blowing open one's safe, may be retained and used by the United
States authorities to prosecute such person for a crime against the
United States. These several cases illustrate and support the principle
upon which rests the decision in the Remus Case. They also show that
the right to complain because of the federal Constitution is a privilege
personal to the wronged party, and that it is not available in any event,
unless the wrongful search and seizure was made or participated in by
officers or agents of the United States.

[3] 3. The witness Hopf also produced and identified certain doc-
uments obtained by searching the printing office of MacDaniel at In-
dianapolis, Ind. These documents consist chiefly of original letters
written and mailed by Mulholland at Cleveland, Ohio, to MacDaniel at
Indianapolis, and carbon copies of what purport to be replies thereto
by MacDaniel. They were admitted in evidence over objection and
exception, and Mulholland, when called as a witness, was permitted to
testify with respect thereto. They were material evidence tending to
show that MacDaniel and Mulholland, as well as others associated with
Mulholland, were engaged in the criminal conspiracy charged in the
indictment. At the time the search was made, MacDaniel had not been
arrested; but Hopf had applied to a judge of the city court of In-
dianapolis, had made an affidavit before him, and had procured a
search warrant to be issued for the premises in question, directed to
city police officers, who accompanied Hopf to the premises, and took
the leading part in serving the warrant and making the search and
seizure.

It was urged below that the warrant is void, and the search and
seizure illegal because neither the affidavit nor the preliminary exam-
ination of Hopf conformed to the specific requirements of Act of Con-
gress June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §
10496¼a et seq.) The trial court, being in doubt as to whether the
warrant was valid under the Indiana law, admitted the documents on
the theory that the evidence tended to show that MacDaniel had vol-
untarily consented to the search and seizure, and in its charge, submit-
ted to the jury as an issue of fact to be found, whether there was a

voluntary consent, and instructed the jury to disregard entirely this evidence unless they so found beyond a reasonable doubt.

If the search and seizure were in fact illegal, and if MacDaniel were in a position to object at the time the evidence was offered, we should have difficulty in agreeing with the views of the court below; but, in the view we take of the case, it is not necessary to decide whether there was sufficient evidence of a voluntary consent to justify submitting this issue of fact to the jury, nor whether the search warrant was void and the ensuing search and seizure were illegal. In our view, upon authorities presently to be cited and reviewed, MacDaniel must be held to have waived his right to object on this ground, and not now to be in a situation under the special circumstances of this case to insist thereon. The rule of Weeks v. United States, supra, and similar cases, is designed to protect the person wronged by a violation of the Fourth Amendment. Undoubtedly he may waive the wrong, either expressly or impliedly. See Essgee Co. v. United States, 262 U. S. 152, 157, 158, 43 Sup. Ct. 514, 67 L. Ed. 917.

This view calls for a consideration of the facts and circumstances. The search was made and the documents seized August 9, 1921. Mac-Daniel was then present, and when informed that the documents sought were his correspondence with Mulholland of Cleveland, pertaining to these lottery tickets, he aided and assisted in finding and sorting them. A preliminary hearing was had in Dayton, Ohio, before a United States commissioner, August 29, 1921. At this hearing MacDaniel was represented by the same counsel who appeared for him at the jury trial. All these seized documents were then introduced in evidence, and were intrusted to a stenographer employed by MacDaniel or his counsel to be copied, and were later redelivered to the Commissioner or the District Attorney. No objection appears to have been then made to their use as evidence. It is likewise inferable that they were again used without complaint in the grand jury investigation.

On January 18, 1922, a jury was impaneled and sworn and the trial begun. Objection was then made for the first time to the use of this evidence. It was not made until after the taking of testimony was in progress. It was then made, not by a formal petition or motion to suppress the evidence, or to require the return of the documents, but merely by an objection to the admissibility of the evidence. At this stage of the proceedings, without stopping or delaying the trial, the trial judge requested the production of the search warrants, and the district attorney promised to procure and produce them, and did so later, after much additional evidence had been received. In what way or manner he procured the affidavit and search warrant, which properly should be a part of the records of the city court of Indianapolis, does not appear. The trial was nearly completed before the trial judge had examined the same sufficiently to express an opinion, and was even then left in doubt as to whether or not the warrant was void, but submitted to the jury the issue of fact as to whether MacDaniel had consented to the search.

Under these circumstances we are of opinion that the rule of Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, and other cases which have approved it, should be adopted and followed, and that

this case is not within the special circumstances such as would justify an application of the exception thereto of limited scope recognized in Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, and Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654. That general rule, briefly stated, is that the fact that papers and other items of evidence were illegally taken from the possession of the party against whom they were offered, or were otherwise unlawfully obtained, is no valid objection to their admissibility, if they are pertinent to the issue, and that the court will not take notice of how they were obtained, whether lawfully or unlawfully, nor will it frame an issue to determine that question. See, also Weeks v. United States, 232 U. S. 383, 395, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319; Lyman v. United States (9 C. C. A.) 241 Fed. 945, 154 C. C. A. 581; Wiggins v. United States (2 C. C. A.) 272 Fed. 41; Cabiale v. United States (9 C. C. A.) 276 Fed. 769, 772; Winkle v. United States (8 C. C. A.) 291 Fed. 493. See, also, 1 Greenleaf on Evidence, § 254a; 3 Wigmore on Evidence, § 2183; note to State v. Turner, 136 Am. St. Rep. 129, 135.

This is recognized as the general rule in the Gouled and Amos Cases, and special circumstances are required to justify a departure from it. In the Weeks Case, this general rule is recognized and emphasized, and the departure therefrom is justified only on the ground that it is necessary to prevent arbitrary action on the part of officials clothed with the authority of the United States. It was held that a departure from the rule was justified if the search and seizure were in fact made by United States officers or agents in violation of the Fourth Amendment and a seasonable and timely application were made in advance of trial for the suppression of evidence thus wrongfully obtained and for a return of the seized documents. However, it has been later held in Perlman v. United States, 247 U. S. 7, 38 Sup. Ct. 417, 62 L. Ed. 950, that an order granting or refusing such an application is a final and appealable order, and in Burdeau v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, an appeal from such an order was permitted on behalf of the government. If there is an inconsistency in permitting a final and appealable order to be later reexamined collaterally and disregarded, it seems to have passed unnoticed.

In the Gouled Case there were also special circumstances justifying the exception therein recognized to the general rule. As to one document having evidential value only, the illegal search and seizure did not come to the knowledge of the accused until after the trial was in progress. As to the other seized documents, it was conceded that the search and seizure had been made pursuant to a valid warrant; but it was held that, in view of the nature of the seized documents, as disclosed by the certificate, any search and seizure thereof, even under a valid warrant, would be unreasonable, and therefore in violation of the Fourth Amendment. Moreover, a timely and seasonable application for the suppression and return thereof had been made in advance

of trial, and had been denied, thereby reproducing as to them the conditions of the Weeks Case. That the general rule is as stated in the Adams and other cases, and that it should be followed, in the absence of special circumstances, is recognized in these words:

"While this is a rule of great practical importance, yet after all it is only a rule of procedure, and therefore is not to be applied as a hard and fast formula to every case, regardless of its special circumstances."

In the instant case there was some color of authority under which the search and seizure were made. The United States officer must be acquitted of any intentional wrongful conduct. That the search was not conducted oppressively is evidenced by MacDaniel's cheerful acquiescence and his voluntary assistance. That he did not feel he had been aggrieved is evidenced by his acquiescence in the possession and use of the seized documents by the government as evidence. Both he and his able counsel not only neglected to make a timely and seasonable application for the suppression and return of the documents, but apparently acquiesced without objection in their use as evidence in the commissioner's hearing and the grand jury investigation. It was not until after a jury had been sworn and the trial started that objection was first interposed, and then only in the form of an objection to the admissibility of evidence. No petition was filed, the allegations of which might have been traversed, and a judgment entered, from which the government, if aggrieved, might have appealed. The objection was first made at such a time and under such circumstances that the trial court, after such investigation as it was able to make, was still left in doubt as to whether the search warrant was valid. It is conceivable that in many cases the government could not have procured and produced the search warrant and affidavits which were properly a part of the records of a state court of another state. It is likewise conceivable that, had the judge and clerk of that court been available as witnesses, a different aspect might have been given to the facts, as was apparently done with respect to the search warrant issued by Commissioner Lenz for the premises of MacNabb. The illegality of the search and seizure did not and could not be made plainly to appear from the government's testimony, as in the Amos Case.

In addition thereto, it is conceivable that the government was or might have been surprised by an objection taken at this late date. It is probable that, had the government been advised of this objection by a seasonable and timely application, followed by an order from which it did not desire to appeal, it might and would otherwise have prepared for trial, and have procured and had present other evidence fully adequate to meet the changed situation resulting from a suppression of this evidence. If the government had been thus surprised, it was without remedy, because, owing to the late hour at which the objection was made, the trial had so far progressed that the court was without power to discharge the jury without the defendant's consent, except upon condition that the result would be available as a bar to another prosecution for the same offense. See I Zoline's Fed. Crim. Law and Proc. § 231. It would create a dangerous precedent to lay down an exception to the general rule, whereby skillful counsel might thus surprise and entrap

the government, and procure the acquittal of offenders against the law without a trial upon the merits. No special circumstances exist justifying a disregard of the general rule. On the contrary, MacDaniel must be held to have waived his right to complain on this ground, and not to be in a position to assert it in the manner in which he did at that stage of the trial.

It should be added that we have carefully examined the evidence. As a result of this examination we are convinced that defendant's guilt was established beyond a reasonable doubt, and that no different verdict should or would have followed, even had this evidence been excluded. Other independent and sufficient evidence was introduced to establish all the elements of the crime charged. Indeed, it shows a violation also by MacDaniel of section 237, Criminal Code (Comp. St. § 10407), prohibiting the sending of lottery tickets by express in interstate commerce. No injustice appears to have been done to MacDaniel. The spirit, if not the letter, of amendment of February 26, 1919, to section 269, Judicial Code (U. S. Comp. Stat. 1919, § 1246), would forbid a reversal on this ground even if the evidence were improperly received.

4. Certain other errors in the charge and in rulings on the admissibility of evidence are assigned; but, as none others were insisted on in oral argument, a separate comment is unnecessary. It is sufficient to say that we do not perceive therein any substantial, if, indeed, any, error.

The judgment and sentence of the court below are affirmed.