## ROSENBERG v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 17, 1926.)

No. 7324.

1. Intoxicating liquors ⚖⟳167—Owner of building, who has knowledge that tenant is maintaining nuisance therein, is aider and abettor, and indictable as principal.

The owner of a building, which he manages and in which he resides, who has knowledge that a tenant is maintaining nuisance therein in violation of law, *held* an aider and abettor, and subject to indictment as principal.

2. Searches and seizures ⚖⟳3.

Defendant cannot avail himself of illegality of search of premises or seizure of property in which he claims to have no interest.

3. Criminal law ⚖⟳693.

Defendant who knows sometime before trial that certain evidence is in possession of Government to which he desires to object, must make that objection seasonably, and not wait until it is first offered at trial.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

Criminal prosecution by the United States against Israel Rosenberg. Judgment of conviction, and defendant brings error. Affirmed.

Frank E. Tyler, of Kansas City, Mo. (Gossett, Ellis, Dietrich & Tyler and Fred W. Lewis, all of Kansas City, Mo., on the brief), for plaintiff in error.

S. M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before STONE and LEWIS, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. The defendant, Rosenberg, was tried on an information charging the unlawful possession of a still, unlawful manufacture of whisky, unlawful possession of whisky, and the maintenance of a nuisance at 718 Penn street, Kansas City, Mo. He was convicted on the nuisance count only, and brings error.

Rosenberg owned a large building in Kansas City, covering the greater part of a city block, and containing over 200 rooms. Due to a difference in street levels, it had three separate basements, in addition to several upper stories. He lived with his family at 718 Penn street. The whisky and distilling apparatus found by the government was in a part of the premises which could be reached either from Seventh street or Penn street, and retained by the defendant, and fairly

within the description contained in the information. Penn street was on the higher level, while the Seventh street premises were three floor levels below.

Defendant testified that in November, 1924, he leased the Seventh street premises to parties by the name of Kamol and Faron for a syrup factory; that as part of the agreement the lessees were permitted to use his telephone and install a buzzer, by which a button placed in the defendant's living quarters, and hidden by some wall decorations, operated a buzzer in the so-called syrup factory, and a button in the syrup factory in turn operated a buzzer in Rosenberg's quarters. This buzzer, however, actually ran into a dugout adjoining the syrup factory, where a large still and a quantity of fermenting mash were found.

Defendant says he visited the syrup factory every month to collect the rent, and that he had seen Kamol and Faron operating a small truck about the premises, bringing in jars and other containers. These lessees were not accounted for at the trial. The dugout was cleverly concealed behind the south wall of the third basement, going up from the lower street level, and immediately under what is designated as the main basement, that extends under the entire building. It could be entered through a trapdoor working on a spring lock arrangement, cleverly concealed under a false sink, or from the lower levels by going up an old chimney by a ladder found there, and then through a door leading into the still room.

The first objection made is to a part of the court's charge on the nuisance count. The court told the jury that, if they believed there was a building possessed and owned by the defendant, in which intoxicating liquor was manufactured in violation of law, and that the defendant knowingly maintained such building in which liquors were so manufactured, it was their duty to find the defendant guilty on the nuisance count. This language, perhaps, is not the best or clearest that could have been used under all the circumstances, and might have confused the jury. It is not clear whether the word "knowingly," as used, refers only to the maintenance of the building, or to the maintenance of a building in which the defendant knew intoxicating liquor was being manufactured or kept in violation of law.

No exceptions were taken to the charge, however, and the court corrected any harm this language might have caused by instructing the jury, at defendant's request, that if they found that there was material and implements for the manufacture of whisky in the room described, and that the same were brought in by others than the defendant, and without his knowledge, and that he knew nothing about it, they must acquit the defendant.

[1] The Boitano Case (C. C. A.) 7 F.(2d) 324—the only federal case cited by the defendant—is not in point. There the court affirmatively found that the accused had severed his connection with the premises in question prior to the time of the offense, and that there was no evidence tending to show that he maintained it. In the case at bar the defendant admittedly was the owner of the building, managed it himself, and lived therein. His room was connected with the dugout by the buzzer system, and it could be reached from his office through the main corridor of the building, and descending one flight of stairs, and then turning to the left and entering the vacant room, under which the dugout was found.

Steir v. United States (C. C. A.) 2 F. (2d) 149, holds that: "Knowledge of the owner or agent, in control of rented premises, that they are being used for the unlawful manufacture of liquor, and his acquiescence therein, makes him an aider and abettor, and subject to indictment as a principal."

[2] It is next charged that the search warrant and the return thereof were insufficient, and that the evidence secured thereunder should have been excluded. The answer to this is that defendant disclaimed any ownership or interest in the property seized in the still room, claiming to have leased the premises. The Goldberg Case (C. C. A.) 297 F. 98, holds that a defendant cannot avail himself of the illegality of the search of a place with which he had no connection, or the seizure of property in which he claims no interest. See, also, Chicco v. U. S. (C. C. A.) 284 F. 434. None of the liquor found was on the part of the premises occupied by the defendant as living quarters. The jury found on the other counts that it was not his, and defendant's counsel in his opening stated that it was unknown to defendant, and he had nothing to do with it.

[3] Further, defendant was present and made no objection to the search. The officers, on previous visits to the premises, had detected the odor of fermenting mash, and before they got into the still room on the day of the raid discovered a strong odor, and found mash running out on the floor of the adjoining room. The accused knew in advance of the existence of the evidence, the way in which it was procured, yet made no

effort to prevent its use until offered at the trial. It was then too late. Rossini v. U. S. (C. C. A.) 6 F.(2d) 350.

Finally, it is contended that the demurrer of the defendant to the evidence should have been sustained, and the case taken from the jury for lack of evidence. We have carefully read the record. The evidence is largely circumstantial, and not as convincing as might be wished for, yet we are of the opinion that there was sufficient to justify its submission to the jury, who are, under proper instructions, the sole judges of its credibility and weight. Comp. Stats. § 1672; Stoecko v. U. S. (C. C. A.) 1 F.(2d) 612.

The judgment should be affirmed; and it is so ordered.