**HOLT v. UNITED STATES.**
No. 5580.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1930.

WEST, District Judge, dissenting.

H. C. Markle, of Detroit, Mich. (Douglas, Barbour & Wing, of Detroit, Mich., on the brief), for appellant.

L. H. Grettenberger, of Grand Rapids, Mich. (Edward J. Bowman, of Grand Rapids, Mich., on the brief), for the United States.

Before HICKS and HICKENLOOPER, Circuit Judges, and WEST, District Judge.

HICKENLOOPER, Circuit Judge.

The appellant, Raymond Holt, was the foreman of the garage, dispatcher and general office man of the Chicago-Detroit Express Company, which company operated a motor trucking business between Detroit and Chicago. He was not a stockholder or officer of the corporation, but, under the title of assistant secretary, he had power to sign checks, employ additional trucks to handle freight, furnish drivers with expense money, quote and fix rates, make out waybills, and generally direct and facilitate the movement of freight. On May 8, 1929, he employed two additional men, with the truck and semi-open trailer belonging to one of them, to handle a load leaving Detroit that evening and to

be delivered at the company's warehouse in Chicago the next morning. The trailer was left by its owners at the company's Detroit warehouse, or dock, for loading, and was turned over to the drivers fully loaded and covered by a tarpaulin. Holt then paid them $20 for expenses and delivered the waybills, which he had previously made out, purporting to show the prepaid shipment, among others, of 117 boxes of "Anicon" tablets from the C. E. Jamieson Company, manufacturing chemists of Detroit, to the Anicon Company in Chicago, and nine boxes from Crane Company, Detroit, to Baer Brothers plumbing contractors, 1252 South Crawford avenue, Chicago. The boxes were stenciled, either by error or by design to distinguish them, as from "Jamieson Drug Company," instead of C. E. Jamieson Co.; "Anacin" misspelled "Anicon" both in designating contents and in the name of the consignee; and "Crane" misspelled as "Craine."

When the truck reached the vicinity of Sturgis, Mich., on its way to Chicago, it lost a wheel, and while it was so disabled, prohibition enforcement agents, who were patrolling the highway, stopped and inspected the load. When it was discovered that 113 boxes of the supposed Anacin tablets in fact each contained three cases of beer, and the 9 boxes of supposed plumbing supplies each contained four cases of whisky, the liquor was seized and the drivers arrested. They, of course, pleaded complete ignorance of the contents of their load, and Holt was subsequently indicted and convicted, as a principal, by reason of his participation in the illegal transportation of these intoxicating liquors.

When the case was called for trial, a motion was made to suppress and withhold from the jury all evidence obtained by the seizure of the officers, for the reason that the search and seizure had been without search warrant, and thus in claimed violation of the Fourth Amendment to the Constitution of the United States. This motion was denied, and such action forms the basis of the first contention of error.

We are of the opinion that this motion to suppress did not come too late. The defendant resided in Detroit. The indictment was returned at Grand Rapids, and removal was resisted. Ultimately, the defendant was required to, and did, give bond for appearance at a specified term of court in the Western District of Michigan. Promptly upon complying with the condition of his bond, the point was raised, and was not thereafter

waived. His appearance was analogous to arrest as of its date, or appearance upon an indictment but newly returned, and it was then not too late to raise the question. Gouled v. U. S., 255 U. S. 298, 305, 41 S. Ct. 261, 65 L. Ed. 647; Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654.

We pass, without considering it necessary to decide, whether the search of the truck was constitutionally made and legal, under the doctrine of Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; or illegal, as based upon the absence of reasonable grounds for believing a crime was being committed, under the doctrine of Gambino v. U. S., 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381. The excessive weight of the shipment, as a shipment of drugs, the appearance of burlap through the cracks in the boxes, its transportation over a main highway between the international boundary and Chicago in the dead of night, the professed ignorance of the drivers of the contents of the load except as shown by the waybills, which they surrendered, and lack of any evidence of protest to examination, all tend to support the claim of legality. On the other hand, the reasonableness of shipment by night to avoid obstruction by other traffic, the fact that the load was covered, lack of identification of either truck or drivers with previous traffic in liquor, the growing use of burlap as a lining for boxes in a variety of businesses, and other facts, tend to refute the existence of reasonable grounds.

Be that as it may, it is clear, we think, that no right of the defendant was violated. Neither he, nor the corporation by which he was employed, owned the truck or its contents. It is true that the truck and its drivers were employed as the instrumentalities or even, possibly, the independent contractors, by which the transportation was to be accomplished, and that the drivers and owners of the truck would be entitled to the constitutional protection, but one malefactor may not claim the right to escape by reason of the fact that the constitutional rights of another were violated. See Agnello v. U. S., 269 U. S. 20, 35, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Remus v. U. S., 291 F. 501 (C. C. A. 6); MacDaniel v. U. S., 294 F. 769 (C. C. A. 6); Simmons v. U. S., 18 F.(2d) 85, 87 (C. C. A. 8); Nelson v. U. S., 18 F. (2d) 522–524 (C. C. A. 8); Rosenberg v. U. S., 15 F.(2d) 179, 180 (C. C. A. 8); Graham v. U. S., 15 F.(2d) 740 (C. C. A. 8); Cantrell v. U. S., 15 F.(2d) 953 (C. C. A. 5);

Goldberg v. U. S., 297 F. 98 (C. C. A. 5); Schwartz v. U. S., 294 F. 528 (C. C. A. 5); Chicco v. U. S., 284 F. 434 (C. C. A. 4); and compare also Guckenheimer & Bros. Co. v. U. S., 3 F.(2d) 786, and Newingham v. U. S., 4 F.(2d) 490 (both C. C. A. 3).

The only other question requiring consideration relates to the admission of evidence, tendered by the government, of the fact that on August 21st, following the episode of May 8th and 9th, above discussed, federal prohibition enforcement agents went to the warehouse and dock of the Chicago-Detroit Express Company, and there discovered large quantities of intoxicating liquor, viz., some 2,064 pints of whisky and 300 quarts of champagne. It is contended that this evidence violates the rule that, "on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible" (16 C. J. 586), and does not fall within any of the recognized exceptions to the rule.

In charging the jury, the court below specifically instructed the jurors that this evidence was not admitted and should not be considered by them as showing, or tending to show, a propensity on the part of the respondent to commit crimes generally, or to commit crimes of the same sort as that charged; and that it was admitted simply to be given such consideration and weight as the jury believed it was entitled to receive, in determining whether or not the respondent, at the earlier date, knowingly engaged in the unlawful transportation of intoxicating liquors by aiding, abetting, and participating in the same.

Ordinarily, he who instigates, procures, or participates in a criminal act is guilty as a principal. Section 332, Criminal Code (18 USCA § 550). It was not disputed that Holt had made a rate for the shipment in question, hired the truck, trailer, and drivers for its transportation, made out the waybills, advanced the expense money, and started the truck on its journey. But, when confronted with this evidence of participation, Holt insisted that the rate had been made over the telephone in the innocent belief that he was quoting a rate upon a carload shipment of drugs; that the shipment had been delivered at the warehouse without his seeing it; that the foreman of the warehouse and the common laborers alone had handled

it; that the waybills had been made out in the honest belief that the so-called Jamieson shipment was of Anacin tablets and the so-called Crane shipment was of plumbing supplies; and, generally, that he wholly lacked all wrongful motive and criminal intent.

The question thus directly raised was not, strictly speaking, one of knowledge, but one of criminal intent. Evidence was also introduced tending to show Holt's knowledge of the presence of the intoxicating liquors found in the warehouse on August 21st. Obviously knowledge of the possession of liquor at this later date would have no logical nor probative effect to show a like "knowledge" on the preceding May 8th, although, supported by the presumption that he who is in general charge of a business knows what is taking place at the location of such business, knowledge of an earlier possession might well be regarded as tending to show knowledge at a later date. Had the evidence been admitted as bearing upon "knowledge," or as simply evidence of another independent, although similar, crime, its admission would probably have constituted error.

But we are dealing here, not with knowledge, but with intent, accident, or alleged unfortunate coincidence. A particular knowledge is not one of the necessary and indispensable ingredients of the crime charged, as in receiving stolen goods, possession of counterfeit money, false pretenses, and the like. The defendant here attempted to meet the almost inevitable conclusion of his participation in the unlawful transportation of liquor by the contention that he was the innocent tool of designing strangers, that he wholly lacked all criminal intent. Under these circumstances his position is logically weakened by evidence which may be explained as consistent with innocence only by the intervention of the same alleged accidental circumstances. This doctrine is well expounded by Prof. Wigmore: " * * * An unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them." 1 Wigmore on Evidence (2d Ed.) § 302 et seq.

No good purpose would be served by a review of the myriad of cases where evidence of other and collateral transactions has been admitted to prove the quo animo, scienter, motive, or intent of the defendant in the doing of a particular act; nor in restating the circumstances under which such evidence may strongly tend to support the charge

made. Many of the authorities would be inapplicable to the present case, for there the evidence was introduced to show knowledge, while here its purpose is to negative the claim of accident and the alleged innocent motive, injected into the case by the defendant himself. It is sufficient to say that from the earliest times the propriety of admitting evidence for the purpose here stated has been fully recognized. Bottomley v. U. S., 1 Story, 135, 143, Fed. Cas. No. 1688 (C. C., 1st Cir.); Mudsill Mining Co., Ltd., v. Watrous, 61 F. 163, 169 (C. C. A. 6); Penn Mut. Life Ins. Co. v. Mech. Sav. Bk. & Tr. Co., 72 F. 413, 423, 38 L. R. A. 33 (C. C. A. 6); State v. Lapage, 57 N. H. 245, 294, 24 Am. Rep. 69; Opinion of Earl, J., in People v. Shulman, 80 N. Y. 373, note; quoted and cited with approval in Mayer v. People, 80 N. Y. 364, 373; People v. Molineux, 168 N. Y. 264, 300, 61 N. E. 286, 62 L. R. A. 193. Compare also Wood v. U. S., 16 Pet. 342, 10 L. Ed. 987; New York Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 599, 6 S. Ct. 877, 29 L. Ed. 997; Williamson v. U. S., 207 U. S. 425, 451, 28 S. Ct. 163, 52 L. Ed. 278; Shea v. U. S., 236 F. 97, 102 (C. C. A. 6); Galbreath v. U. S., 257 F. 648, 658 (C. C. A. 6); Grant v. U. S., 268 F. 443 (C. C. A. 6); Sapir v. U. S., 174 F. 219 (C. C. A. 2).

When introduced to show intent, or repel the possibility of accident or mistake, the time of occurrence of the collateral circumstance is immaterial. Such duplication of the same situation is just as abnormal after the time laid in the indictment as before. Accordingly it is held that evidence of the collateral circumstance after as well as before the alleged commission of the crime may be admitted. Wood v. U. S., supra; Penn Mut. Life Ins. Co. v. Mech. Sav. Bk. & Tr. Co., supra; People v. Shulman, supra; U. S. v. Snyder (C. C.) 14 F. 554; State v. Call, 48 N. H. 126, 132; Commonwealth v. Price, 10 Gray (Mass.) 472, 476, 71 Am. Dec. 668. The courts generally use the phrase "at or about the same time," but it is clear, we think, that the length of the separating interval, and the fact that evidence of but one other similar instance was here proved, go only to the weight of the evidence, not to its admissibility. Spurr v. U. S., 87 F. 701, 711 (C. C. A. 6). In each case the question is, and of necessity must be, whether the evidence tendered has probative effect, logically and under the doctrine of chances. If it has, and we think such is the case here, it should not be excluded sim-

ply because it also shows the commission of another crime. This last fact is immaterial. Commonwealth v. Jeffries, 7 Allen (Mass.) 548, 83 Am. Dec. 712, quoted with approval in Rumely v. U. S., 293 F. 532, 551 (C. C. A. 2); State v. Lapage, supra, 57 N. H. at page 295; People v. Shulman, supra, at page 376 of 80 N. Y.

Judgment affirmed.

WEST, District Judge.

I respectfully dissent. The record shows that the substantial question was, in the language of the charge: "Whether the unusual circumstances were such as to convince you beyond a reasonable doubt that respondent had guilty knowledge of the fact that the packages contained whisky and beer and that he was assisting in the unlawful transportation thereof."

Consequently the evidence of the transaction of August 21, not being admissible on the bare question of defendant's knowledge on May 9 preceding, should not have been admitted on the theory that it tended to throw light upon his motive or intent, these depending solely upon his knowledge or lack of knowledge. And, if this proof was thought by the government to go to motive or intent, it should and no doubt would have been introduced in chief instead of on rebuttal.