## CONNOLLY et al. v. MEDALIE.
### No. 340.

Circuit Court of Appeals, Second Circuit.
May 16, 1932.

George Z. Medalie, U. S. Atty., of New York City (U. S. Grant, and George R. Pfann, Asst. U. S. Attys., both of New York City, of counsel), for appellant.

Sanford H. Cohen, of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Connolly, McGuire, and Murray filed separate petitions in the District Court for the Southern District of New York, praying that the United States attorney for that district be directed to suppress any evidence obtained through a search of certain premises used as a brewery, and a seizure of property found thereon, in a criminal proceeding already instituted against them, and in any other which might follow. Connolly's petition alleged that he was "employed at 71 Riverside Avenue, City of Port Jervis * * * as a night watchman and was in sole charge, possession and control thereof." That at night certain prohibition agents broke the gate of the premises and forced an entrance, after which they searched a number of factory buildings, "said to be owned by the Neversink Cereal Beverage Company and the Neversink Ice Company, all the premises being surrounded by a wall." They had no search warrant and no probable cause to search without one. He gave no further details as to the circumstances of the search. The petitions of McGuire and Murray were identical, and even more scanty. Each alleged that prohibition agents broke and entered the premises described in Connolly's petition, searched them, and "seized certain property therein." "Some time thereafter I entered those premises, was arrested and charged with a violation of the National Prohibition Act." That each was later arraigned and released on bail; and that the search and seizure was without warrant or probable cause. All three petitions were heard together, and the respondent answered, attempting to show that the officers had probable cause to suppose that the premises were being used as a brewery. As to Connolly, the answering affidavits alleged that he was a watchman who had fled upon learning the identity of the officers. They scaled a gate, entered the premises, and gained access to the buildings which they searched and found to be a brewery in operation. While there McGuire and Murray entered—known to them under other names—and "admitted to us that they were the operators of the brewery and that they had intended to move the beer that night. * * * We thereupon placed" them "under arrest as owners of the brewery." The judge decided that the entry was

unlawful, and entered an order suppressing the use of the evidence so obtained.

We assume for argument that the search and seizure were unlawful; and that any persons aggrieved might suppress the evidence so acquired. None of the petitioners fall within that class. Although Connolly alleged that he was in "sole charge, possession and control" of the brewery, it was only as a "watchman." This relation to the property did not make its invasion a wrong to him; his supposed "possession" was not such at all. He was only a servant on the premises, and, certainly in New York, had no possession; possession remained in his employer. Kerrains v. People, 60 N. Y. 221, 19 Am. Rep. 158; Presby v. Benjamin, 169 N. Y. 377, 62 N. E. 430, 57 L. R. A. 317; Haywood v. Miller, 3 Hill (N. Y.) 90; Napier v. Spielmann, 127 App. Div. 567, 111 N. Y. S. 983. The entry and the search which followed, were therefore no wrong to him, but to the Neversink companies, which were the owners, if he be right. He would for this reason be unable to secure a return of the property seized. Gallagher v. U. S., 6 F.(2d) 758 (C. C. A. 2); The Ng Ka Py Cases, 24 F.(2d) 772 (C. C. A. 9). The power to suppress the use of evidence unlawfully obtained is a corollary of the power to regain it. The prosecution is forbidden to profit by a wrong whose remedies are inadequate for the injury, unless they include protection against any use of the property seized as a means to conviction. The relief being thus remedial, the evidence has never been thought incompetent against anyone but the victim. Conceivably it might have been; it might have been held that the prosecution, though not disqualified from taking advantage of another's wrong (Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159), should not profit in any wise by its own. But that would obviously introduce other than remedial considerations; the doctrine would then be like that of equity which denies its remedies to one who is not himself scathless. Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409, has often been cited as limiting the incompetency to the person aggrieved, but it scarcely goes so far; the evidence, unlawfully seized, was apparently not used against the other defendants at all. Nor does Taylor v. U. S., 52 S. Ct. 466, 76 L. Ed. ——, touch the situation at bar; Taylor was in possession of the property seized. So far as we can find, the Supreme Court has not passed upon the point, but it has been ruled in all Circuit Courts of Appeal but the First, and always against defendants whose rights had not been invaded. Haywood et al. v. U. S., 268 F. 795, 803, 804 (C. C. A. 7); Chicco v. U. S., 284 F. 434 (C. C. A. 4); Remus v. U. S., 291 F. 501, 509, 511 (C. C. A. 6); Schwartz v. U. S., 294 F. 528 (C. C. A. 5); MacDaniel v. U. S., 294 F. 769 (C. C. A. 6); Goldberg v. U. S., 297 F. 98 (C. C. A. 5); Rouda v. U. S., 10 F.(2d) 916, 917 (C. C. A. 2); Rosenberg v. U. S., 15 F.(2d) 179, 180 (C. C. A. 8); Graham v. U. S., 15 F.(2d) 740, 742 (C. C. A. 8); Cantrell v. U. S., 15 F.(2d) 953 (C. C. A. 5); Nielson v. U. S., 24 F.(2d) 802 (C. C. A. 9); Patterson v. U. S., 31 F.(2d) 737 (C. C. A. 9); U. S. v. Messina, 36 F.(2d) 699 (C. C. A. 2); McShann v. U. S., 38 F.(2d) 635 (C. C. A. 10); Holt v. U. S., 42 F.(2d) 103 (C. C. A. 6); Chepo v. U. S., 46 F.(2d) 70 (C. C. A. 3).

The petitions of McGuire and Murray contain even less than Connolly's; they avoid any allegation that they were the owners, or in possession of, the brewery; they say nothing except that they entered while the search was in progress and were arrested. It is true that the officers' answering affidavits allege as a justification for their arrest that they said that they were "operators" of the brewery, and that the officers arrested them as its "owners." The officers' conclusion is immaterial, and, assuming that "operating" would be enough to establish possession, the petitioners did not concede that they had said what the officers put in their mouths. The petition is a pleading; it must squarely allege some violation of the petitioner's rights; else he has no standing. Perhaps he may mend his hold while the proceeding is in progress; perhaps he may accept as true what is alleged against him and go on; but nothing short of that is enough. The difference is substantial. Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma.

Order reversed; petitions dismissed.